UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| FACTORY DIRECT WHOLESALE, LLC, <br><br> Plaintiff, <br><br> v. <br><br> ITOUCHLESS HOUSEWARES & PRODUCTS, INC., <br><br> Defendant. | Case No. 19-CV-01228-LHK <br><br> **ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS** <br><br> Re: Dkt. No. 31 |

Plaintiff Factory Direct Wholesale ("Plaintiff") sued Defendant iTouchless Housewares & Products, Inc. ("Defendant") and alleged false advertising under the Lanham Act, intentional interference with contract, intentional interference with prospective economic advantage, negligent interference with prospective economic advantage, violations of California's Unfair Competition Law, and trademark infringement. Before the Court is Defendant's motion to dismiss. ECF No. 34. Having considered the submissions of the parties, the relevant law, and the record in this case, the Court GRANTS in part and DENIES in part Defendant's motion to dismiss.

## I.    BACKGROUND

### A. Factual Background

As alleged in the First Amended Complaint ("FAC"), Plaintiff and Defendant are competing sellers on the Amazon e-commerce platform. ECF No. 28 ¶ 2 (FAC). Sellers on Amazon are subject to established rules and policies that govern their advertisements (i.e., listings) of their products on the website. *Id.* ¶ 20. For example, the Amazon Seller Agreement, which governs the seller's access and use of Amazon's online marketplace, requires the seller to represent and warrant that "any information provided . . . to Amazon . . . is at all times accurate and complete." *Id.* ¶¶ 20-21. Other policies, such as the Amazon Code of Conduct, requires that sellers "not engage in any 'unfair behavior' or activities that (a) intentionally damage another seller, including its listings or ratings, or (b) manipulate or game the Amazon.com selling or buying process, including Amazon's search results or sales rankings." *Id.* ¶ 24. "Sellers are further prohibited from contributing false, misleading or inauthentic content." *Id.* (citation omitted). The FAC alleges that both Plaintiff and Defendant agreed to these terms with Amazon in order to sell their products. *Id.* ¶¶ 22-23.

Products on Amazon are identified "through a unique combination of 10 letters and numbers, referred to as an Amazon Standard Identification Number or "ASIN" designation." *Id.* ¶ 31. "When a vendor uploads information for a new product for sale," "Amazon assigns that new product a unique ASIN," which appears in the product's details and can be used to search and find the product. *Id.* Plaintiff's products have various unique ASIN designations and are advertised on Amazon. *Id.* ¶¶ 32-33.

In the "summer of 2018," Plaintiff discovered that "false, deceptive, and unauthorized changes were being made" to its product advertisements and listings. *Id.* ¶¶ 34-35. These alterations included changing product descriptions, providing improper ASIN numbers, and changing the product's listing category (thereby moving the product from Amazon's Home & Kitchen category). *Id.* Plaintiff learned that a third party was requesting Amazon to make these changes, and as a result of Amazon's actions, Plaintiff's products' ASINs were being merged into other products. *Id.* ¶ 36.

Plaintiff reportedly discovered that Defendant was responsible for making these requests

and filed suit in the Northern District of Georgia on August 29, 2018 (the "Georgia action"). *Id.* ¶¶38-42; *see also Factory Direct Wholesale, LLC v. iTouchless Housewares & Prods. Inc.*, Case No. 1:18-cv-04091-CAP, ECF No. 1 (N.D. Ga. Aug. 29, 2018); ECF No. 31-1 Ex. A. Around October 23, 2018, Plaintiff also discovered that Defendant was utilizing, without authorization or license, Plaintiff's BESTOFFICE trademark to advertise a 13-gallon trash can. FAC ¶ 73. Plaintiff is the owner of the trademark for BESTOFFICE ("Supplemental Mark") and has used the Supplemental Mark since December 7, 2013. *Id.* ¶ 65-66. Defendant had used the mark since no later than January 10, 2018 and sought to register the Supplemental Mark on September 10, 2018. *Id.* ¶¶ 68-69. The United States Patent and Trademark Office ("USPTO") rejected the registration on December 19, 2018 because the mark was too similar to Plaintiff's Supplemental Mark. *Id.* ¶ 75.[1] Plaintiff did not bring suit for trademark infringement in the Georgia action.

During the pendency of the Georgia action, Plaintiff alleges that the "knowingly false and deceptive changes" to its listings ceased. However, beginning in February 2019, after the filing of the Georgia action, Defendant allegedly "renewed its conduct in requesting that Amazon make changes to [Plaintiff's] product listings that are knowingly false, deceptive and unauthorized, and that mislead the consuming public by misrepresenting Defendant's advertised products as well as [Plaintiff's] products and listings." *Id.* ¶ 46.

For example, in late February 2019, Defendant allegedly requested unauthorized changes to one of Plaintiff's listings, the "4ZB4 Listing."[2] As a result of these requests, Amazon altered the 4ZB4 Listing such that it falsely advertised the 4ZB4 product as a "product manufactured and branded by Defendant". *Id.* ¶ 49; *see id.* ¶ 50 (Defendant "caused Amazon to make changes to the product image, title, and description that falsely and deceptively changed FDW's 4ZB4 Listing from the original 13-gallon trash can to an 'iTouchless EcoWise Compost Bin Container Dual Deodorizer Activated Carbon Filters, 1.32 Gallon Kitchen Trash Can, Stainless Steel Lid, Odor-

---

[1] On March 5, 2019, the USPTO found that the Supplemental Mark satisfied the requirements to move to the Principal Register. *Id.* ¶ 77.
[2] The 4ZB4 Listing was not at issue in the Georgia action. *See* ECF No. 31-1, Ex. A ¶ 11 (the "Georgia complaint").

Case No. 19-CV-01228-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

Stopping Power White/Cream Buck.'").

Plaintiff alleges that during this time period starting in February 2019, Defendant attempted to make additional and similar false and deceptive changes to other product listings belonging to Plaintiff. *See id.* ¶¶ 54-64. According to Plaintiff, Defendant "falsely represented to Amazon that [Plaintiff's] 4ZB4 Listing was a duplicate listing that should be merged into [Defendant's] Listing." *Id.* ¶ 54. Amazon merged the two listings such that the 4ZB4 Listing "no longer appeared in customer searches on" Amazon. *Id.* ¶ 55.

Defendant also allegedly "attempted to falsely and deceptively" merge two of Plaintiff's listings—the "FQWE Listing" and the "JYK7 Listing," both of which are unrelated to the 4ZB4 Listing. *Id.* ¶¶ 59-62. Plaintiff, however, does not allege that Defendant's efforts were successful. *Id.*. Finally, Plaintiff alleges that Defendant made additional requests to Amazon in 2019, including (1) "[f]alse and deceptive changes to the image(s) in [Plaintiff's] listing; (2) "[f]alse and deceptive changes to the description in [Plaintiff's] listing; (3) "[f]alsely submitted an unfavorable review for [Plaintiff's] listing; (4) [f]alsely and deceptively removing [Plaintiff] from Amazon's vendor control." *Id.* ¶ 63.

## B. Procedural History

### 1. The Georgia Action

On August 29, 2018, Plaintiff sued Defendant in the Northern District of Georgia. ECF No. 31-1 Ex. A (the "Georgia complaint"). Plaintiff claimed that Defendant requested unauthorized changes to Plaintiff's listings, including providing improper ASIN variances, but the Complaint did not allege that any of the changes were deceptive or misleading. *Id.* ¶¶ 8-22. Plaintiff sued pursuant to product listings with ASINs B071KZ91K1, B0727VDHZQ, B072F1WBXW, and B07BTHQMPQ.[3] *Id.* ¶ 11. Plaintiff sued under the Lanham Act, the Georgia Uniform Deceptive Trade Practices Act, and the Georgia Fair Business Practices Act. *Id.* ¶¶ 23-36. Plaintiff also alleged Georgia claims for tortious interference with contractual relations

---

[3] None of these products or product listings are at issue in the N.D. Cal. action.

Case No. 19-CV-01228-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

and tortious interference with business relations. *Id.* ¶¶ 37-49. For relief, Plaintiff sought damages, costs, fees, and injunctive relief. *Id.* at 11-15 ¶¶ A-Z.

On November 29, 2018, the court in the Georgia action granted Defendant's motion to dismiss all claims with prejudice. ECF No. 31-1 Ex. B ("Georgia Order"). As to the Lanham Act claim, the court held that plaintiff "allege[d] no facts regarding the defendant's advertisements" and "ma[de] no allegation that the changes made by Amazon at the defendant's request deceived or had the capacity to deceive consumers." *Id.* at 4. As to the state statutory claims, the court in the Georgia action concluded that the requested changes "d[id] not even hint at deception." *Id.* at 5. Specifically, the court determined that the complaint never alleged that the changes resulted in some falsity or misrepresentation to the consuming public, that defendant "misrepresented itself to Amazon as the plaintiff," or that the changes defendant requested were false or deceptive. *Id.* at 5-6. As to the remaining tortious interference claims, the court disposed of them by finding plaintiff did not allege "improper conduct or wrongful actions by the defendant." *Id.* at 7.

### 2. The N.D. Cal. Action

On March 6, 2019, Plaintiff filed a complaint in the instant action. ECF No. 1. After Defendant filed a motion to dismiss on April 16, 2019, ECF No. 20, Plaintiff filed the First Amended Complaint ("FAC") on May 7, 2019, ECF No. 28. Compared to the complaint in the Georgia action, the FAC in the instant action contains additional detail about Amazon's rules and policies, FAC ¶¶ 20-30, and provides more specific allegations about Defendant's purported actions and how the changes to Plaintiff's listings "falsely advertised" or misrepresented Plaintiff's products as products "manufactured and branded by Defendant" *id.* ¶ 49; *see id.* ¶¶ 50-64.

For example, Plaintiff alleges that Defendant requested that Amazon make changes to Plaintiff's products and listings to falsely advertise Plaintiff's 4ZB4 product "as a product manufactured and branded by Defendant." *Id.* ¶ 49, 52. According to Plaintiff, Defendant also "falsely represented to Amazon that [Plaintiff's] 4ZB4 Listing was a duplicate listing that should be merged into [Defendant's] Listing." *Id.* ¶ 54. Amazon merged the two listings such that the

United States District Court
Northern District of California

4ZB4 Listing "no longer appeared in customer searches on" Amazon. *Id.* ¶ 55. "All of the changes requested by Defendant in February 2019 to [Plaintiff's 4ZB4] product listing[] . . . were knowingly false and deceptive because they were not authored by [Plaintiff]; they falsely advertised Defendant's products; and they misrepresented inherent and material qualities and characteristics of [Plaintiff's] products to the consuming public, including the product title, image, brand, manufacturer, and description of the 13-gallon trash can." *Id.* ¶ 56.

Additionally, Plaintiff claims that starting in February 2019, Defendant also "attempted to falsely and deceptively" merge Plaintiff's FQWE and JYK7 Listings, but Plaintiff does not allege that Defendant's efforts were successful. *Id.* ¶ 59-62. Finally, Plaintiff pleads that Defendant made additional requests to Amazon in 2019, including (1) "[f]alse and deceptive changes to the image(s) in [Plaintiff's] listing; (2) "[f]alse and deceptive changes to the description in [Plaintiff's] listing; (3) "[f]alsely submitted an unfavorable review for [Plaintiff's] listing; (4) [f]alsely and deceptively removing [Plaintiff] from Amazon's vendor control." *Id.* ¶ 63.

On this basis, Plaintiff alleges six causes of action against Defendant: (1) violations of the Lanham Act; (2) intentional interference with contract; (3) intentional interference with prospective economic advantage; (4) negligent interference with prospective economic advantage; (5) violations of California' Unfair Competition Law ("UCL"); and (6) trademark infringement. FAC ¶¶ 79-151. For the first five causes of action, Plaintiff purports to only seek recovery for conduct occurring in or after February 2019. *Id.* ¶¶ 85-86, 98, 111, 125, 138-39.

On May 21, 2019, Defendant filed a motion to dismiss the FAC. ECF No. 31 ("Mot."). On June 4, 2019, Plaintiff filed an opposition to Defendant's motion, ECF No. 34 ("Opp."), and on June 11, 2019, Defendant filed a reply, ECF No. 35 ("Reply"). On June 18, 2019, Plaintiff filed a motion to strike the reply brief for allegedly raising a new argument concerning issue preclusion. ECF No. 37. Defendant responded to the motion to strike on July 2, 2019, ECF No. 42, and Plaintiff filed a reply on July 9, 2019, ECF No. 43. On September 17, 2019, the Court ordered supplemental briefing regarding issue preclusion and denied the motion to strike. ECF No. 45. Plaintiff and Defendant each filed supplemental briefs on September 23, 2019, ECF Nos.

United States District Court
Northern District of California

46 and 47, and then filed supplemental replies on September 27, 2019, ECF Nos. 48 and 49.  The motion to dismiss is now fully briefed and ripe for adjudication.

## II.    LEGAL STANDARD

### A.    Motion to Dismiss Under Federal Rule of Civil Procedure 12(b)(6)

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief."  A complaint that fails to meet this standard may be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).  The U.S. Supreme Court has held that Rule 8(a) requires a plaintiff to plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.* (internal quotation marks omitted).  For purposes of ruling on a Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party."  *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

The Court, however, need not accept as true allegations contradicted by judicially noticeable facts, *see Schwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000), and it "may look beyond the plaintiff's complaint to matters of public record" without converting the Rule 12(b)(6) motion into a motion for summary judgment, *Shaw v. Hahn*, 56 F.3d 1128, 1129 n.1 (9th Cir. 1995).  Nor must the Court "assume the truth of legal conclusions merely because they are cast in the form of factual allegations."  *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per curiam) (internal quotation marks omitted).  Mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss."  *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004).

### B.    Motion to Dismiss Under Federal Rule of Civil Procedure 9(b)

Case No. 19-CV-01228-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

Claims sounding in fraud are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). *Bly-Magee v. California*, 236 F.3d 1014, 1018 (9th Cir. 2001). Under the federal rules, a plaintiff alleging fraud "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). To satisfy this standard, the allegations must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985). Thus, claims sounding in fraud must allege "an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007). In other words, "[a]verments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (citation omitted). The plaintiff must also plead facts explaining why the statement was false when it was made. *See In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1549 (9th Cir. 1994) (en banc), *superseded by statute on other grounds as stated in Marksman Partners, L.P. v. Chantal Pharm. Corp.*, 927 F. Supp. 1297 (C.D. Cal. 1996).

"When an entire complaint . . . is grounded in fraud and its allegations fail to satisfy the heightened pleading requirements of Rule 9(b), a district court may dismiss the complaint . . . ." *Vess*, 317 F.3d at 1107. A motion to dismiss a complaint "under Rule 9(b) for failure to plead with particularity is the functional equivalent of a motion to dismiss under Rule 12(b)(6) for failure to state a claim." *Id.*

### C. Leave to Amend

If the Court determines that a complaint should be dismissed, it must then decide whether to grant leave to amend. Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "shall be freely given when justice so requires," bearing in mind "the underlying purpose of Rule 15 to facilitate decisions on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (alterations and internal quotation

8

marks omitted).  When dismissing a complaint for failure to state a claim, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts."  *Id.* at 1130 (internal quotation marks omitted).  Accordingly, leave to amend generally shall be denied only if allowing amendment would unduly prejudice the opposing party, cause undue delay, or be futile, or if the moving party has acted in bad faith.  *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008).

## III.  DISCUSSION

Defendant seeks to dismiss the FAC on three grounds.  First, Defendant argues that claim preclusion bars this action.  Second, Defendant contends that if claim preclusion does not apply, issue preclusion does and requires dismissal.[4]  Finally, Defendant asserts that the claims fail on the merits.  The Court addresses each argument in turn.

### A.  Claim Preclusion

"Under the doctrine of claim preclusion, a final judgment forecloses successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit."  *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008).  Put another way, "[c]laim preclusion bars a party in successive litigation from pursuing claims that were raised or could have been raised in a prior action."  *Media Rights Techs., Inc. v. Microsoft Corp.*, 922 F.3d 1014, 1020 (9th Cir. 2019) (quotation marks and internal alterations omitted).

Claim preclusion "applies when the earlier suit (1) involved the same 'claim' or cause of action as the later suit, (2) reached a final judgment on the merits, and (3) involved identical parties or privies."  *Mpoyo v. Litton Electro-Optical Sys.*, 430 F.3d 985, 987 (9th Cir. 2005) (internal alterations and quotation marks omitted); *see also Howard v. City of Coos Bay*, 871 F.3d 1032, 1039 (9th Cir. 2017) ("Claim preclusion requires (1) an identity of claims, (2) a final judgment on the merits, and (3) privity between parties.").

---

[4] As to claim and issue preclusion, the parties assume that federal common law applies and the Court does the same.

The Court analyzes Plaintiff's claims under the Lanham Act, UCL, and common law tortious interference before turning to Plaintiff's remaining trademark infringement claim.

### 1. Claim Preclusion Does Not Bar Plaintiff's Lanham Act Claim But Plaintiff's UCL and Tortious Interference Claims Are Claim Precluded

As to Plaintiff's Lanham Act, UCL, and common law tortious interference claims, the parties only dispute whether the instant action "involve[s] the same 'claim'" as the Georgia action. *See Mpoyo*, 430 F.3d at 987. Courts employ four criteria to evaluate whether claims are identical:

> (1) whether the two suits arise out of the same transactional nucleus of facts; (2) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (3) whether the two suits involve infringement of the same right; and (4) whether substantially the same evidence is presented in the two actions.

*Id.* The first criterion—whether the suits involve the same transactional nucleus of facts—"is the most important." *Howard*, 871 F.3d at 1039.

As relevant to the instant case, the Ninth Circuit explained that "[t]he inquiry about the 'same transactional nucleus of facts' *is the same inquiry as* whether the claim could have been brought in the previous action." *Id.* (quotation omitted). The Ninth Circuit then held that suits do not involve the same transactional nucleus of facts when the second suit involves claims "post-dating the filing of the initial complaint" because those claims could not have been brought in the earlier-filed action. *Id.* In other words, "claim preclusion does not apply to claims that accrue after the filing of the operative complaint." *Id.* at 1040.

Recently, the Ninth Circuit reiterated that "claim preclusion does not apply to claims that were not in existence and could not have been sued upon—*i.e.*, were not legally cognizable—when the allegedly preclusive action was initiated." *Media Rights*, 922 F.3d at 1021. The Ninth Circuit explained that the timing of accrual depends on a claim's specific accrual rules. For example, *Media Rights* held that copyright law recognized a "separate-accrual rule" whereby "the statute of limitations runs separately from each [successive] violation." *Id.* at 1023. In other words, "a new cause of action for copyright infringement accrued each time [defendant] sold an allegedly infringing product," and therefore, claim preclusion did not bar copyright infringement

claims brought after the filing of the earlier case.  *Id.* at 1023-25.  On the other hand, the Ninth

Circuit reasoned that because plaintiff's other claims—including a Digital Millennium Copyright

Act ("DMCA") claim and a breach of contract claim—did not recognize a separate-accrual rule,

those claims accrued before the earlier-filed action such that claim preclusion barred those claims.

*Id.* at 1025-26.

In light of *Media Rights*, the central question here is whether Plaintiff's current claims

accrued or "came into existence or arose," and thus could have been sued upon before Plaintiff

filed the Georgia action.  *See id.* at 1022.  Plaintiff concedes that its claims "arise[] out of a

continuing course of conduct that provided the basis for the earlier claim," but argues that its

"claims are not barred by res judicata as a matter of law because [the claims] did not accrue until

February 2019, long after the filing of the Georgia [a]ction in August 2018."  Opp. at 8-9, 11.  The

Court addresses Plaintiff's Lanham Act, UCL, and tortious interference claims in that order.

### i.       Claim Preclusion Does Not Bar Plaintiff's Lanham Act Claim

"The relevant event in determining when a Lanham Act claims accrues is 'the time the

plaintiff knew or should have known about his § 43(a) cause of action."  *Gianni Versace, S.p.A. v.*

*Dardashti*, 2008 WL 11338729, at *2 (C.D. Cal. Apr. 21, 2008) (quoting *Jarrow Formulas, Inc. v.*

*Nutrition Now, Inc.*, 304 F.3d 829, 838 (9th Cir. 2002)).  Under *Media Rights*, Plaintiff only

learned about its Lanham Act claims after Defendant allegedly renewed its conduct in February

2019, after the Georgia action was filed on August 29, 2018.

The Fifth Circuit has reached the same conclusion.  In *Retractable Technologies., Inc. v.*

*Becton Dickinson & Co.*, the Fifth Circuit considered, *inter alia*, whether claim preclusion barred

Lanham Act false advertising claims after the parties had previously settled a suit for antitrust

violations and product disparagement, which were "based on the same advertising issues litigated"

in the later-filed action.  842 F.3d 883, 889-90 (5th Cir. 2016).  The Fifth Circuit answered in the

negative and explained that because the false advertisements "complain[ed] of in [the] second

lawsuit were made after the 2004 settlement of the first lawsuit," the plaintiff "therefore could not

have brought these claims during the pendency of the first lawsuit, and the new post-2004

advertisements and sales tactics . . . created new causes of action that are not barred by res judicata." *Id.* at 899.

Defendant nonetheless argues that in the Georgia action, "Plaintiff sought forward-looking, injunctive relief for the very conduct alleged in this action" such that "Plaintiff cannot avoid the operation of the *res judicata* doctrine." Reply at 3. Defendant raised this argument for the first time in the reply brief, and the Court "need not consider arguments raised for the first time in a reply brief." *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007). Even setting aside this fact, Defendant's argument still fails. The Ninth Circuit has already rejected Defendant's argument in *Media Rights* and explained that "[t]he Supreme Court's decision in *Lawlor* forecloses" the argument that "claim preclusion bars the post-filing copyright infringement claims because [plaintiff] sought prospective relief in" the earlier-filed action. 922 F.3d at 1025 (citing *Lawlor v. Nat'l Screen Serv. Corp.*, 349 U.S. 322, 328-29 (1955)); *see Lawlor*, 349 U.S. at 328-29 ("A combination of facts constituting two or more causes of action on the law side of a court does not congeal into a single cause of action merely because equitable relief is also sought.").

The Court therefore follows *Media Rights* and *Retractable Technologies* to hold that Defendant's alleged February 2019 misconduct "created new causes of action that are not barred by res judicata." *Retractable Techs.*, 842 F.3d at 899. Accordingly, the Court DENIES Defendant's motion to dismiss Plaintiff's Lanham Act claim because claim preclusion does not bar this claim.

### ii. Claim Preclusion Bars Plaintiff's UCL Claim

California law determines when Plaintiff's UCL claim accrued. *See Media Rights*, 922 F.3d at 1026 ("California law determines when MRT's breach of contract claims accrued."); *see id.* ("[A] federal court when exercising supplemental jurisdiction over a state law claim applies state law in the same manner it would if sitting in diversity." (citing *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966)). Plaintiff concedes that its claims "arise[] out of a continuing course of conduct that provided the basis for the earlier claim," but appears to rely on a theory of continuous accrual. Opp. at 11. Under California law, the continuous accrual doctrine recognizes

12

that "a series of wrongs or injuries may be viewed as each triggering its own limitations period, such that a suit for relief may be partially time-barred as to older events . . . but timely as to those within the applicable limitations period." *Wolf v. Travolta*, 167 F. Supp. 3d 1077, 1104 (C.D. Cal. 2016) (quoting *Aryeh v. Canon Bus. Solutions, Inc.*, 55 Cal. 4th 1185, 1192 (2013)).

"Generally speaking, continuous accrual applies whenever there is a continuing or recurring obligation: When an obligation or liability arises on a recurring basis, a cause of action accrues each time a wrongful act occurs, triggering a new limitations period." *Aryeh*, 55 Cal. 4th at 1199 (quotation marks omitted). In *Aryeh v. Canon Business Solutions, Inc.*, the question before the California Supreme Court was "when a UCL claim accrues." *Id.* at 1192. The California Supreme Court found that the continuous accrual doctrine can apply to UCL claims when the claims involved unlawful charges in monthly bills, but also explained that "[t]o determine whether the continuous accrual doctrine applies here," courts "look not to the claim's label as a UCL claim but to the nature of the obligation allegedly breached." *Aryeh*, 55 Cal. 4th at 1200.

Plaintiff does not clarify "the nature of the obligation allegedly breached." *See id.* California courts have largely confined the application of the continuing accrual theory to "a limited category of cases, including installment contracts, leases with periodic rental payments, and other types of periodic contracts that involve no fixed or total payment amount." *Lamont v. Time Warner, Inc.*, 2012 WL 6146681, at *5 (C.D. Cal. Dec. 11, 2012). This court has repeatedly noted that when an alleged duty "bears little relation to the monthly payments or monthly bills that California courts have found to be periodic, recurring obligations," applying the continuous accrual doctrine is unwarranted. *See Garrison v. Oracle Corp.*, 159 F. Supp. 3d 1044, 1083-84 (N.D. Cal. 2016); *see also State ex rel. Metz v. CCC Info. Servs., Inc.*, 149 Cal .App.4th 402, 418 (2007) (holding that the continuous accrual doctrine does not apply where "[the plaintiff's] action does not involve a recurring obligation or any such period payment obligations"); *Tsemetzin v. Coast Fed'l Sav. & Loan Ass'n*, 57 Cal.App.4th 1334, 1344 (1997) (applying the continuous accrual doctrine to a dispute over monthly rent payments); *Armstrong Petroleum Corp. v. Tri-*

13

*Valley Oil & Gas Co.*, 116 Cal. App. 4th 1375, 1388-89 (2004) (applying the continuous accrual doctrine to a dispute over monthly lease payments). Indeed, a "continuing obligation to avoid anticompetitive behavior is not a periodic, recurring obligation such as a monthly payment or monthly bill, and as such, the continuous accrual doctrine does not apply." *Ryan v. Microsoft Corp.*, 147 F. Supp. 3d 868, 896 (N.D. Cal. 2015).

Here, absent Plaintiff's description of a duty Defendant owed, Defendant's obligation to Plaintiff could be termed a "continuing obligation to avoid illegal behavior that violates the UCL." But just as this Court previously concluded that a "continuing obligation to avoid anticompetitive behavior is not a periodic, recurring obligation such as a monthly payment or monthly bill," Defendant's continuing obligation to avoid illegal behavior that violates the UCL is also not a periodic, recurring obligation. *See id.* Plaintiff alleges no other similar periodic transaction in the FAC. "[A]s such, the continuous accrual doctrine does not apply." *Id.*

Because the continuous accrual doctrine does not apply, Plaintiff's UCL claim must have accrued during Defendant's previous course of alleged misconduct prior to February 2019. Plaintiff's UCL claim was therefore "in existence," could have been sued upon, and was "legally cognizable" when the Georgia action was initiated. *See Media Rights*, 922 F.3d at 1021.

Accordingly, claim preclusion bars Plaintiff's UCL claim. Because Plaintiff's UCL claim is barred by claim preclusion, the Court finds that amendment would be futile. *Hernandez v. Fed. Home Loan Mortg. Corp.*, 663 Fed. App'x 518, 519 (9th Cir. 2016) (affirming district court's dismissal with prejudice of plaintiffs' claims on claim preclusion grounds because "amendment would have been futile"). Therefore, the Court GRANTS Defendant's motion to dismiss Plaintiff's UCL claim with prejudice.

### iii. Claim Preclusion Bars Plaintiff's Tortious Interference Claims

Plaintiff also brings tortious interference claims. Specifically, Plaintiff alleges intentional interference with contract, intentional interference with prospective economic advantage, and negligent interference with prospective economic advantage. Like Plaintiff's UCL claim, California law determines when Plaintiff's tortious interference claims accrued. *See Media Rights*,

922 F.3d at 1026 ("California law determines when MRT's breach of contract claims accrued.");
*see id.* ("[A] federal court when exercising supplemental jurisdiction over a state law claim applies
state law in the same manner it would if sitting in diversity." (citing *Gibbs*, 383 U.S. at 726)).

Again, Plaintiff appears to rely on a theory of continuous accrual, but this time for their
tortious interference claims. However, Plaintiff fails to cite—and the Court has not found—a case
that applied the California continuous accrual doctrine to tortious interference claims. *DC Comics
v. Pac. Pictures Corp.*, 938 F. Supp. 2d 941, 949 (C.D. Cal. 2013) ("Indeed, the parties cite no
cases, and the Court has found none, directly applying either of California's continuing-wrong
principles to tortious-interference claims."); *see also Wolf*, 167 F. Supp. 3d at 1106 ("To the extent
plaintiffs allege in their complaint that the continuous accrual theory applies to this claim, the
Court is unaware of any authority applying this equitable doctrine (under California law) to
tortious interference claims; indeed, some courts in this circuit have noted the dearth of any such
authority."); *Nano-Second Tech. Co. v. Dynaflex Int'l*, 2013 WL 1855828, at *3 (C.D. Cal. May 1,
2013) ("[T]he theory of continuous accrual does not toll the statute of limitations for tortious
interference claims, and should not be invoked in this Action."); *Boon Rawd Trading Int'l v.
Paleewong Trading Co., Inc.*, 688 F. Supp. 2d 940, 952 (N.D. Cal. 2010) ("Indeed, based upon an
examination of California decisions that have applied the 'continuing tort' doctrine, none have
extended the doctrine to the tort of intentional interference with prospective economic
advantage.").

The Court need not decide whether the continuous accrual doctrine applies to tortious
interference claims. Even assuming that the continuous accrual doctrine applies to tortious
interference claims, Plaintiff has not demonstrated that the doctrine applies to Plaintiff's claims.
As noted previously with regard to Plaintiff's UCL claim, California courts have largely confined
the application of the continuing accrual theory to "a limited category of cases, including
installment contracts, leases with periodic rental payments, and other types of periodic contracts
that involve no fixed or total payment amount." *Lamont*, 2012 WL 6146681, at *5. The
California Supreme Court has held that "[t]o determine whether the continuous accrual doctrine

15

1   applies" to a given claim, courts "look not to the claim's label . . . but to the nature of the

2   obligation allegedly breached." *Aryeh*, 55 Cal. 4th at 1200.

3         As with the UCL claim, Plaintiff does not clarify "the nature of the obligation allegedly

4   breached" for the tortious interference claims. *See id.* In any event, any asserted duty or

5   obligation that was allegedly breached here "bears little relation to the monthly payments or

6   monthly bills that California courts have found to be periodic, recurring obligations." *See*

7   *Garrison*, 159 F. Supp. 3d at 1083-84. Furthermore, Plaintiff alleges no other similar periodic

8   transaction in the FAC; thus, the continuous accrual doctrine does not apply to Plaintiff's tortious

9   interference claims.

10        Because the continuous accrual doctrine does not apply, Plaintiff's tortious interference

11   claims must have accrued during Defendant's previous course of alleged misconduct prior to

12   February 2019. Plaintiff's tortious interference claims were therefore "in existence," could have

13   been sued upon, and was "legally cognizable" when the Georgia action was initiated. *See Media*

14   *Rights*, 922 F.3d at 1021.

15        Therefore, claim preclusion bars Plaintiff's tortious interference claims. Because claim

16   preclusion bars Plaintiff's tortious interference claims, the Court finds that amendment would be

17   futile. *Hernandez*, 663 Fed. App'x at 519 (affirming district court's dismissal with prejudice of

18   plaintiffs' claims on claim preclusion grounds because "amendment would have been futile").

19   Accordingly, the Court GRANTS Defendant's motion to dismiss Plaintiff's tortious interference

20   claims with prejudice.

21       **2. Claim Preclusion Does Not Bar Plaintiff's Trademark Infringement Claim**

22        Defendant also seeks to dismiss Plaintiff's trademark infringement claim on claim

23   preclusion grounds. The Court notes that claim preclusion is the only basis upon which Defendant

24   moves to dismiss Plaintiff's trademark infringement claim.

25        In contrast to Plaintiff's Lanham Act, UCL, and common law tortious interference claims,

26   Plaintiff does not argue that the trademark infringement claim accrued after the filing of the

27   Georgia action. Rather, Plaintiff argues that claim preclusion does not bar its trademark

28

16

infringement claim because the allegations of trademark infringement do not "involve the same claim or cause of action" as the conduct alleged in the Georgia action. *See Mpoyo*, 430 F.3d at 987; Opp. at 13-14.

Whether the two suits involve the same claim or cause of action requires the court to look at four criteria:

> (1) whether the two suits arise out of the same transactional nucleus of facts; (2) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (3) whether the two suits involve infringement of the same right; and (4) whether substantially the same evidence is presented in the two actions.

*Mpoyo*, 430 F.3d at 987.

Courts utilize "a transaction test to determine whether the two suits share a common nucleus of operative fact," and "[w]hether two events are part of the same transaction or series depends on whether they are related to the same set of facts and whether they could be conveniently tried together." *Id.* The Ninth Circuit has held that two suits arise out of the same transactional nucleus of facts when, for example, claims arise from an employer's conduct while plaintiff was an employee and "specifically from the events leading to his termination." *Id.* Furthermore, the Title VII, FLSA, and FMLA claims in that case "form[ed] a convenient trial unit that disclose[d] a cohesive narrative of an employee-employer relationship and a controversial termination." *Id.*

Defendant argues that Plaintiff's trademark infringement claim "arises from the same alleged acts," including "advertising on the Amazon website" and "use of the allegedly infringing marks before and during the pendency of the Georgia [a]ction." Mot. at 15. Defendant's argument fails.

Broadly speaking, the Georgia action and Plaintiff's trademark infringement claim do arise out of "advertising on Amazon's website." *Id.* Nonetheless, the earlier-filed Georgia action centered on Defendant's misrepresentations to Amazon, which supposedly led Amazon to merge Plaintiff's listings into Defendant's even though the products were distinct. *See* Georgia Compl. at 3-4. On the other hand, in the instant action, Plaintiff's trademark infringement claim is

United States District Court
Northern District of California

predicated on Defendant's alleged use of Plaintiff's registered trademark without authorization or license. *See* FAC ¶¶ 65-77. As Plaintiff correctly notes, the exhibit allegedly showing Defendant's infringement of Plaintiff's trademark does not contain any information about Plaintiff's products that were falsely or deceptively changed through requests to Amazon. Opp. at 13. The factual basis for the Georgia action and the trademark infringement claim therefore do not "relate to the same set of facts" and do not "share a common nucleus of operative fact." *Mpoyo*, 430 F.3d at 987.

The "common-nucleus criterion is the 'most important' of the criteria" courts consider in the "same claim" analysis, and the "common-nucleus criterion" is generally "outcome-determinative." *Media Rights*, 922 F.3d at 1028 (collecting cases). Indeed, the Ninth Circuit has noted that a court need "not consider the other criteria" after assessing the common-nucleus criterion. *Id.* at 1029. On this basis, the Court need not reach the other criteria to hold that Plaintiff's trademark infringement claim does not involve the same claim or cause of action as the Georgia action.

Accordingly, the Court DENIES Defendant's motion to dismiss Plaintiff's trademark infringement claim because claim preclusion does not apply to this claim. Because Defendant moves to dismiss the trademark infringement claim only on the basis of claim preclusion, Plaintiff's trademark infringement claim survives Defendant's motion to dismiss in its entirety.

### B. Issue Preclusion

The Court next addresses Defendant's argument that issue preclusion requires dismissal. Because (1) the Court granted Defendant's motion to dismiss with prejudice as to Plaintiff's California UCL and tortious interference claims, and (2) Defendant only moved to dismiss Plaintiff's trademark infringement claim on claim preclusion grounds, the Court only addresses Defendant's issue preclusion argument as to Plaintiff's Lanham Act claim.

Issue preclusion, like claim preclusion, "protect[s] against the expense and vexation attending multiple lawsuits, conserve[s] judicial resources, and foster[s] reliance on judicial action by minimizing the possibility of inconsistent decisions." *Media Rights*, 922 F.3d at 1020 (quoting

18

*Taylor*, 553 U.S. at 892). For issue preclusion to apply, four conditions must be met: "(1) the issue at stake was identical in both proceedings; (2) the issue was actually litigated and decided in the prior proceedings; (3) there was a full and fair opportunity to litigate the issue; and (4) the issue was necessary to decide the merits." *Janjua v. Neufeld*, 933 F.3d 1061, 1065 (9th Cir. 2019) (quotation marks omitted); *see also Howard*, 871 F.3d at 1041 (same). Here, the parties only dispute the second criterion—whether Plaintiff's allegations that Defendant made false and misleading statements were actually litigated in the Georgia action.

"Unlike claim preclusion, . . . issue preclusion requires that an issue must have been actually and necessarily determined by a court of competent jurisdiction to be conclusive in a subsequent suit." *Janjua*, 933 F.3d at 1065 (quotation marks omitted). "Thus, issue preclusion does not apply to those issues that could have been raised, but were not . . . ." *Id.* The Ninth Circuit held that "an issue is actually litigated when an issue is raised, contested, and submitted for determination." *Id.* at 1066 (citing Restatement (Second) of Judgments § 27, cmt. (d) (1982)). "Under this standard, neither an issue that could have, but was not, asserted . . . nor an issue that was raised but admitted was 'actually litigated.'" *Id.* Furthermore, courts often "look[] to the record of the prior proceeding to determine whether an issue was in fact raised, contested, and submitted for determination." *Id.* at 1065.

In the Georgia action, the district court found that the complaint alleged that "plaintiff discovered that unauthorized changes were being made to its product listings on Amazon.com, including changing product descriptions, providing improper ASIN variances, and changing product listing categories." ECF No. 31-1, Ex. B at 2. The district court in the Georgia action also determined that the complaint alleged "that the changes were being requested by third parties . . . whom the plaintiff contacted . . . and demanded that they cease unauthorized changes to the plaintiff's products." *Id.* Based on these allegations, the Georgia court dismissed all of plaintiff's claims.

First, the Georgia court dismissed the Lanham Act claims because "the only action alleged by the plaintiff is the defendant's request to Amazon to change the plaintiff's product

information." *Id.* at 4. Specifically, "[t]he plaintiff allege[d] no facts regarding the defendant's advertisements . . . [or] that the changes made by Amazon at the defendant's request deceived or had the capacity to deceive consumers." Second, the Georgia court dismissed the Georgia state statutory claims because the requested changes "d[id] not even hint at deception." *Id.* at 5. Specifically, the court determined that the complaint never alleged that the changes resulted in some falsity or misrepresentation to the consuming public, that defendant "misrepresented itself to Amazon as the plaintiff," or that the changes defendant requested were false or deceptive. *Id.* at 5-6. Third, as to the remaining Georgia tortious interference claims, the court disposed of them by finding plaintiff did not allege "improper conduct or wrongful actions by the defendant." *Id.* at 7.

Indeed, the complaint in the Georgia action is threadbare, and the Georgia court accurately described the allegations as pled in the Georgia complaint. For example, the Georgia complaint merely alleges that "FDW discovered that unauthorized changes were being made to certain of its product listings on" Amazon and that "[t]hese authorized changes" included "changing the description of the product[,] providing improper ASIN variances for the product, and changes to the product's listing category." ECF No. 31-1, Ex. A at 4. Plaintiff generally alleged—under the sections on its various causes of action—that Defendant made "false or misleading statements of fact" but the Georgia complaint never describes what these statements were. *Id.* ¶¶ 24, 28, 32.

In contrast, in the instant case, Plaintiff's FAC provides more specific allegations about Defendant's purported false and deceptive actions and how the changes to Plaintiff's 4ZB4 Listing "falsely advertised" or misrepresented Plaintiff's products as products "manufactured and branded by Defendant" *id.* ¶ 49; *see id.* ¶¶ 50-56. For example, Plaintiff alleges that Defendant requested that Amazon make changes to Plaintiff's 4ZB4 product and listing to falsely advertise the 4ZB4 product "as a product manufactured and branded by Defendant." *Id.* ¶ 49, 52. This change "requested by Defendant in February 2019 to [Plaintiff's] product listings . . . were knowingly false and deceptive because they were not authored by [Plaintiff]; they falsely advertised Defendant's products; and they misrepresented inherent and material qualities and characteristics of FDW's products to the consuming public, including the product title, image, brand,

20

manufacturer, and description of the 13-gallon trash can." *Id.* ¶ 56. Plaintiff also alleges that

Defendant engaged in a bevy of "[f]alse and deceptive" actions as to Plaintiff's listings on

Amazon in February 2019, long after the August 2018 filing of the Georgia complaint. *Id.* ¶ 63.

This included Defendant's alleged attempts in February 2019 to merge Plaintiff's FQWE and

JYK7 Listings on Amazon by falsely claiming that the FQWE and JYK7 products were the same

product when they were in fact different. *Id.* ¶¶ 59-62.

      This comparison of the Georgia action and the instant action makes clear that Defendant's

false and misleading statements regarding Plaintiff's listings on Amazon were not raised,

contested, or submitted for determination in the Georgia action because Plaintiff did not include

any such allegations in its Georgia complaint. Courts have found that when a later-filed action

contains new factual allegations that were not present in the earlier-filed action, those allegations

may not have been actually litigated or decided in the prior proceedings. *See Advanced Ion Beam*

*Tech., Inc. v. Varian Semiconductor Equip. Assocs., Inc.*, 721 F. Supp. 2d 62, 76 (D. Mass. 2010)

("The Complaint contains new factual allegations regarding the '328 Patent, . . . [n]o such

allegations were included in Varian's counterclaim in the infringement action, and this court has

not previously considered whether they support AIBT's claims of fraud on the PTO. Accordingly,

application of collateral estoppel principles would not be appropriate."); *Richardson v. Sauls*, 319

F. Supp. 3d 52, 67 (D.D.C. 2018) (holding that issue preclusion applies because a party "fail[ed]

to advance any new allegations that would materially change the facts" and conclusion from the

prior action); *Hegedus v. Nationstar Mortg., LLC*, 2018 WL 1461747, at *3 (W.D. Va. Mar. 23,

2018) ("Important among such other circumstances in determining the applicability of issue

preclusion is new evidence has become available that could likely lead to a different result."

(quotation marks and internal alterations omitted) (quoting Restatement (Second) of Judgments

§ 29, comment (j))). Because the allegations regarding Defendant's false and misleading

statements as to Plaintiff's listings were not present in the Georgia action, the Georgia court could

not have actually decided those issues.

      As a result, Plaintiff's allegations that Defendant knowingly made false and deceptive

United States District Court
Northern District of California

requests to Amazon to misrepresent qualities and characteristics of Plaintiff's products to the public was not "in fact raised, contested, and submitted for determination" and therefore, those issues were not "actually litigated [or] decided in" the Georgia action. *See Janjua*, 933 F.3d at 1065. Accordingly, issue preclusion does not bar Plaintiff's Lanham Act claim, and the Court DENIES Defendant's motion to dismiss to the extent it is premised on issue preclusion.

### C. Failure to State a Claim

The Court finally addresses Defendant's argument that Plaintiff's complaint fails to state a claim under Rule 12(b)(6). Again, as with Defendant's issue preclusion argument, the Court only addresses Defendant's Rule 12(b)(6) argument as to Plaintiff's Lanham Act claim because the Court granted Defendant's motion to dismiss with prejudice as to Plaintiff's California UCL and tortious interference claims and Defendant only moved to dismiss Plaintiff's trademark infringement claim on claim preclusion grounds.

The elements of a Lanham Act false advertising claim are:

> (1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a lessening of the goodwill associated with its products.

*Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997). "Lanham Act false advertising claims must meet the Rule 9(b) particularity pleading requirements." *Genus Lifesciences Inc. v. Lannett Co., Inc.*, 378 F. Supp. 3d 823, 836 n.4 (N.D. Cal. 2019); *see also Bobbleheads.com, LLC v. Wright Bros., Inc.*, 259 F. Supp. 3d 1087, 1095 (S.D. Cal. 2017) ("Rule 9(b) applies to Lanham Act claims that are grounded in fraud.").

Defendant contends that Plaintiff has not adequately pled the first two elements because "there are no allegations that any false statements were made . . . or that any audience would have been deceived by the allegedly false statement." Mot. at 18. The Court analyzes in turn the allegations concerning: (1) the 4ZB4 Listing, (2) the FQWE and JYK7 Listings, and (3) other alleged "false and deceptive" conduct. The Court holds that Plaintiff adequately pleads a Lanham

22

Act claim as to the 4ZB4 Listing but fails to do so as to the remaining allegations.

### 1. Plaintiff's Lanham Act Claim as to the 4ZB4 Listing

The gravamen of Plaintiff's FAC concerning the 4ZB4 Listing is that Defendant "caused Amazon to make changes" to Plaintiff's 4ZB4 Listing through false and misleading statements. FAC ¶¶ 50-51. As a result of Defendant's comments to Amazon, Amazon "change[d] and misrepresent[ed] the description of [Plaintiff's] product," which meant the altered listing falsely registered Plaintiff's product as Defendant's. *Id.* ¶ 52. In other words, "[a]ll of the changes [to Plaintiff's 4ZB4 Listing] requested by Defendant in February 2019 . . . falsely advertised Defendant's products . . . [and] misrepresented inherent and material qualities and characteristics of [Plaintiff's] products to the consuming product." *Id.* ¶ 56.

On these allegations, Plaintiff adequately plead that Defendant made a false statement of fact regarding Plaintiff's 4ZB4 product. As a result of Defendant's actions, the 4ZB4 Listing for Plaintiff's product "falsely advertis[ed] . . . a product manufactured and branded by Defendant" when the product in fact was manufactured and branded by Plaintiff. *Id.* ¶ 49. As a result, Defendant's argument that "there are no allegations that any false statements were made" is meritless. Mot. at 18.

With regard to the second element, "where a statement is literally false or the defendant intentionally set out to deceive, . . . actual deception" is presumed. *AECOM Energy & Constr., Inc. v. Ripley*, 348 F. Supp. 3d 1038, 1056 (C.D. Cal. 2018); *see San Diego Cty. Credit Union v. Citizens Equity First Credit Union*, 360 F. Supp. 3d 1039, 1052 (S.D. Cal. 2019) ("When a statement is literally false, the second and third elements of actual deception and material[ity] are presumed."). Here, Plaintiff alleges that Defendant's listing advertised Plaintiff's 4ZB4 product as Defendant's own. That statement is literally false as pled in the FAC. Therefore, actual deception can be presumed. Defendant offers no argument as to why the presumption should not apply. As such, Plaintiff adequately alleges a Lanham Act false advertising claim as to Plaintiff's 4ZB4 Listing. The Court DENIES Defendant's motion to dismiss Plaintiff's Lanham Act claim to the extent that the claim is predicated on Defendant's actions in relation to the 4ZB4 Listing

## 2. Plaintiff's Lanham Act Claim as to Allegations that Defendant Attempted to Merge Plaintiff's FQWE and JYK7 Listings

Plaintiff's other allegations, however, fail to satisfy Rule 9(b)'s heightened pleading standard. As mentioned previously, Plaintiff alleges that Defendant "attempted to falsely and deceptively" merge Plaintiff's FQWE and JYK7 Listings on Amazon, but Plaintiff does not allege that Defendant's efforts were successful and that the listings were actually merged. *Id.* ¶ 59-62. Plaintiff also claims that Defendant made additional requests to Amazon in 2019, including (1) "[f]alse and deceptive changes to the image(s) in [Plaintiff's] listing; (2) "[f]alse and deceptive changes to the description in [Plaintiff's] listing; (3) "[f]alsely submitted an unfavorable review for [Plaintiff's] listing; (4) [f]alsely and deceptively removing [Plaintiff] from Amazon's vendor control." *Id.* ¶ 63.

As to the allegation that Defendant "attempted to falsely and deceptively" merge Plaintiff's FQWE and JYK7 Listings on Amazon, Plaintiff does not adequately plead that the allegedly false or deceptive statement was made *in a commercial advertisement*, as required for the first element of a Lanham Act claim. *See Southland Sod Farms*, 108 F.3d at 1139 (holding that a Lanham Act claim requires "a false statement of fact by the defendant in a commercial advertisement about its own or another's product"). The FAC does not allege that the Listings were actually merged such that Plaintiff's products were falsely advertised. As was the case in *Sky Billiards, Inc. v. Wolvol, Inc.*, "Plaintiff only alleges Defendant contacted Amazon" with false misrepresentations and "[n]owhere in Plaintiff's complaint does it allege Defendant made any representations to consumers concerning Plaintiff's products." 2016 WL 7479426, at *2 (C.D. Cal. Feb. 22, 2016). In that case, the court found that "Plaintiff d[id] not meet the first element of the Lanham Act's false advertising claim." *Id.*

That same conclusion follows here as to Plaintiff's allegations regarding Defendant's "attempt[] to falsely and deceptively" merge Plaintiff's FQWE and JYK7 Listings. *See id.*; *see also PAX Water Techs., Inc. v. Medora Corp.*, 2019 WL 4390567, at *8 (C.D. Cal. Aug. 5, 2019) ("[T]here can be liability under Section 43(a) only where the advertisement or promotion is 'disseminated sufficiently to the relevant purchasing public.' (quoting *Coastal Abstract Serv., Inc.*

24

*v. First Am. Title Ins. Co.*, 173 F.3d 725, 735 (9th Cir. 1999))). Plaintiff does not allege that these efforts resulted in a false statement *in a commercial advertisement*, and as a result, these allegations fail to state a claim, let alone meet Rule 9(b)'s heightened pleading standard.

The Court therefore GRANTS Defendant's motion to dismiss Plaintiff's Lanham Act claim to the extent it is premised on Defendant's attempts to merge Plaintiff's FQWE and JYK7 Listings. *See* FAC ¶¶ 59-62. The Court nonetheless GRANTS Plaintiff leave to amend because amendment would not be futile, cause undue delay, or unduly prejudice Defendant, and Plaintiff has not acted in bad faith. *Leadsinger*, 512 F.3d 532.

### 3. Plaintiff's Lanham Act Claim as to Allegations of "False and Deceptive" Conduct

Finally, Plaintiff's remaining allegations of misconduct also fail to satisfy Rule 9(b). Plaintiff alleges that Defendant made additional requests to Amazon in 2019, including (1) "[f]alse and deceptive changes to the image(s) in [Plaintiff's] listing; (2) "[f]alse and deceptive changes to the description in [Plaintiff's] listing; (3) "[f]alsely submitted an unfavorable review for [Plaintiff's] listing; (4) [f]alsely and deceptively removing [Plaintiff] from Amazon's vendor control." *Id.* ¶ 63. These are mere legal conclusions couched as factual allegations. Plaintiff does not explain why any of the "changes" or "unfavorable review[s]" were "false and deceptive," as required by Rule 9(b). *See In re Glenfed*, 42 F.3d at 1549 ("[A] plaintiff must set forth, as part of the circumstances constituting fraud, an explanation as to why the disputed statement was untrue or misleading *when made*."). Not only that, but regarding these allegations, Plaintiff again fails to plead whether any of these allegedly false and deceptive actions were made in a commercial advertisement. *Sky Billiards, Inc. v. Wolvol, Inc.*, 2016 WL 7479426, at *2 ("Nowhere in Plaintiff's complaint does it allege Defendant made any representations to consumers concerning Plaintiff's products.").

As a result, the Court GRANTS Defendant's motion to dismiss Plaintiff's Lanham Act claim to the extent it is based on Plaintiff's conclusory allegations that Defendant engaged in "false and deceptive" conduct. *See* FAC ¶¶ 63-64. The Court nonetheless GRANTS Plaintiff leave to amend because amendment would not be futile, cause undue delay, or unduly prejudice

25

Defendant, and Plaintiff has not acted in bad faith. *Leadsinger*, 512 F.3d 532.

## IV.   CONCLUSION

For the foregoing reasons, the Court GRANTS Defendant's motion to dismiss in part and DENIES Defendant's motion to dismiss in part.

Specifically, the Court GRANTS Defendant's motion to dismiss with prejudice as to Plaintiff's California UCL, intentional interference with contract, intentional interference with prospective economic advantage, and negligent interference with prospective economic advantage claims.

The Court GRANTS with leave to amend Defendant's motion to dismiss Plaintiff's Lanham Act claim to the extent that claim is predicated on Defendant's attempts to merge Plaintiff's FQWE and JYK7 Listings on Amazon or Plaintiff's conclusory allegations that Defendant engaged in "false and deceptive" conduct. *See* FAC ¶¶ 59-63.

The Court DENIES Defendant's motion to dismiss as to Plaintiff's Lanham Act claim to the extent it is premised on Defendant's actions regarding the 4ZB4 Listing on Amazon.

Finally, the Court DENIES Defendant's motion to dismiss as to Plaintiff's trademark infringement claim.

Plaintiff shall file any amended complaint within 30 days of this Order.  Failure to file an amended complaint within 30 days of this Order or failure to cure the deficiencies identified herein will result in dismissal of the deficient claims with prejudice. Plaintiff may not add new causes of action or new parties without a stipulation or leave of the Court.

**IT IS SO ORDERED.**

Dated: October 23, 2019

*Lucy H. Koh*
_____
LUCY H. KOH
United States District Judge

Case No. 19-CV-01228-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS